FILED
2011 Mar-15  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| United States *ex rel.*, | ) | |
| | ) | |
| ELIZABETH POWELL, | ) | |
| | ) | |
| Relator, | ) | Case No. 10-00487-RRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE PROCTER & GAMBLE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ARTICLE II MOTION TO DISMISS, WITH PREJUDICE

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT .................................................................................................3

       A.     Section 292(b) Violates Article II .........................................................4

              1.     Article II Requires *Qui Tam* Statutes To Contain
                     Safeguards That Ensure Sufficient Presidential Oversight
                     Of All Enforcement Actions ......................................................4

              2.     Section 292(b) Violates Article II Because It Lacks Any
                     Executive Control Or Accountability Mechanisms ..................8

              3.     This Court Should Follow The District Court's Decision
                     In *Unique Product Solutions* And Strike Down Section
                     292 As Unconstitutional Under The Take Care Clause.............9

              4.     Section 292(b) Lacks Any Of The Executive Control
                     Mechanisms That Have Allowed Other Statutes To
                     Survive Article II Scrutiny.......................................................11

              5.     The Government's Lack Of Control Over *Qui Tam*
                     Section 292(b) Litigation Has Created Serious Problems
                     In The Real World.....................................................................14

              6.     Section 292(b) Also Violates Article II Because It
                     Permits Non-Officers To Prosecute Claims On Behalf Of
                     The United States .....................................................................15

       B.     The District Court's Article II Analysis In *Solo Cup* Was
              Flawed ................................................................................................16

              1.     While *Qui Tam* Statutes Have A Long History, Section
                     292(b) Is Nonetheless Unconstitutional Because It Lacks
                     Any Provision For Governmental Oversight ...........................17

              2.     Article II Makes No Distinction Between Civil And
                     Criminal Actions, And, In Any Event, Section 292(b) Is
                     A Criminal Statute ...................................................................19

              3.     The Government's Ability To Intervene Does Not Create
                     Sufficient Oversight Or Control To Satisfy Article II.............20

        4.      There Is No Provision In Section 292(b) To Alert The
Government That It Should Assert Its Interests ......................22

III.     CONCLUSION..............................................................................24

Defendant The Procter & Gamble Company ("P&G") hereby moves the Court pursuant to FED. R. CIV. P. 12(b)(1) for an Order dismissing putative relator Elizabeth Powell's ("Ms. Powell's") complaint against P&G, with prejudice. The *qui tam* provision of the False Marking Statute, 35 U.S.C. § 292(b) ("Section 292"), is unconstitutional, and it has been struck down as such. *See Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc.*, --- F. Supp. 2d ---, 2011 WL 649998 (N.D. Ohio Feb. 23, 2011) (Exh. 1). Section 292 improperly takes the exclusive control and accountability for federal law enforcement that belongs to the President and the Executive Branch and places it in hands of private citizens with no governmental oversight or control. This violates both the Take Care and Appointments Clauses of Article II of the United States Constitution.

Because Ms. Powell's standing to proceed in this action is based solely on Section 292(b), and because Section 292(b) is constitutionally invalid, this Court lacks subject matter jurisdiction and this action should be dismissed with prejudice.

## I.   INTRODUCTION

Article II of the United States Constitution ensures the liberty and security of the people by placing exclusive control over and accountability for federal law enforcement in the hands of the President and the Executive Branch. The Take Care Clause is the source of the President's authority to enforce federal law. U.S. Const. art. II, § 3. The Appointments Clause ensures that the President (and the Senate) are accountable for the appointments of those charged with enforcing

federal law.   U.S. Const. art. II, § 2, cl. 2.   By constitutional design, it is the President or duly-appointed Executive Branch officials who have exclusive control over federal law enforcement.

*Qui tam* statutes permit any person to sue for violations of federal law on behalf of the United States, sparking tension with Article II.   When a statute authorizes any person to sue, the President loses control over whether, when, and how to enforce federal law.   Nor is the President accountable for the acts of such unappointed individuals.

Nonetheless, the courts of appeals have held that some *qui tam* statutes, such as the False Claims Act ("FCA"), pass constitutional muster by incorporating stringent safeguards to provide the President and the Executive Branch sufficient control over private prosecution of the claims.   For example, the FCA ensures, *inter alia*, that the government:  (1) must be served with copies of FCA complaints before they are filed; (2) has the right to intervene; (3) has primary responsibility for prosecuting FCA claims when it intervenes; and (4) has the right to dismiss or settle FCA claims, even over a private claimant's objections.   *See* 31 U.S.C. § 3730.

Section 292(b) of the Patent Act, 35 U.S.C. § 292(b), is quite different.   It reads, in full:  "Any person may sue for the penalty [for a violation of 35 U.S.C. § 292(a)], in which event one-half shall go to the person suing and the other to the use of the United States."   Section 292(b) contains **none** of the control mechanisms that allowed the FCA to survive Article II scrutiny.

Section 292(b)'s wholesale delegation of prosecutorial authority and discretion, unconstrained by either Executive Branch control or accountability, violates both the Take Care Clause and Appointments Clause of Article II of the United States Constitution.  It is, therefore, unconstitutional and cannot support this Court's exercise of subject matter jurisdiction.  *Unique Prod. Solutions*, 2011 WL 649998.  The Court should dismiss the complaint in this case with prejudice.

## II.   ARGUMENT

Recently, the Federal Circuit held that a relator in a *qui tam* Section 292(b) action has standing "[b]ecause the government would have standing to enforce its own law," meaning that "as the government's assignee [the relator], also has standing to enforce section 292."  *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010).  In that decision, the Federal Circuit noted that an *amicus* raised the issue of whether Section 292(b) violates Article II.  *Id.* at 1327.  While it acknowledged that the *amicus* "raise[d] relevant points," the Federal Circuit declined to consider the issue because the parties to the appeal did not raise it below.  *Id.*

By this motion, P&G challenges the constitutionality of Section 292(b) under Article II of the U.S. Constitution.  Such motions to dismiss are currently pending before several district judges around the country.  In *Unique Prod. Solutions*, a district court struck down Section 292 as unconstitutional under the Take Care Clause for the same reasons set forth in this motion.  2011 WL 649998,

at *6.[1]  The same reasoning applies here, and P&G respectfully submits that this Court should also find the statute unconstitutional.

    **A.**    **Section 292(b) Violates Article II**

        **1.**    **Article II Requires *Qui Tam* Statutes To Contain Safeguards That Ensure Sufficient Presidential Oversight Of All Enforcement Actions**

The Supreme Court defines the Take Care Clause as providing "the general administrative control of those executing the laws, including the power of appointment and removal of executive officers . . . ."  *Buckley v. Valeo*, 424 U.S. 1, 136 (1976); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3151 (2010) ("[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws."  (quoting 1 Annals of Cong. 463 (1789))).  Executive power is granted to the President "to protect the liberty and security of the governed," *Metropolitan Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991), by "ensur[ing] that those who wield[]" potentially tyrannical government power are "accountable to political force and the will of the people." *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 884 (1991).

---

[1] Whether Section 292 violates Article II is a question of critical importance to the viability of any false marking claim.  For this reason, the day after the court issued the ruling in *Unique Prod. Solutions,* the plaintiff filed motions to stay in several of its other false marking cases pending review by the Federal Circuit of the constitutionality of Section 292(b).  *See, e.g., Unique Prod. Solutions, Ltd. v. Off Shore Tackle Co., LLC*, No. 5:10-cv-01947-PAG, ECF No. 17 (N.D. Ohio Feb. 28, 2011) (order granting stay) (Exh. 2); *Unique Prod. Solutions, Ltd. v. HydroHeat, LLC*, No. 5:10-cv-01982-JRA, ECF No. 16 (N.D. Ohio Feb. 24, 2011) (motion to stay) (Exh. 3).

The President's Article II duties encompass all civil litigation brought on behalf of the United States. *Buckley*, 424 U.S. at 138-40. A "lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* at 138, 140. It is, therefore, "'clear that **all** such suits, so far as the interests of the United States are concerned, are subject to the direction, and within the control of, the Attorney-General.'" *Id.* at 139 (quoting *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 458-59 (1869) (emphasis added)).

Presidential accountability for federal law enforcement is a deeply ingrained constitutional principle. *Free Enter.*, 130 S. Ct. at 3152; *see also id.* at 3146. As such, the formal procedures set forth in the Appointments Clause[2] work in concert with the President's Take Care duty to ensure Presidential accountability for federal law enforcement. *Edmond v. United States*, 520 U.S. 651, 663 (1997) ("[The Appointments] Clause [is] designed to preserve political accountability relative to important Government assignments"); *see Freytag*, 501 U.S. at 884 (explaining that, through the Appointments Clause, "[t]he Framers understood . . . that by limiting the appointment power, they could ensure that those who wielded it were accountable to political force and the will of the people.").

Those who bring suit in the name of the United States must be duly appointed officers to preserve Executive Branch accountability for their conduct.

---

[2] U.S. Const. art. II, § 2, cl. 2.

The Supreme Court holds that individuals "exercising significant authority pursuant to the laws of the United States . . . **must** . . . be appointed in the manner prescribed" by the Appointments Clause. *Buckley*, 424 U.S. at 126 (emphasis added); *see United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 758 (9th Cir. 1993).[3]  "[C]onducting civil litigation in the courts of the United States for vindicating public rights" is a key executive function that "may be discharged **only** by persons who are 'Officers of the United States.'" *Buckley,* 424 U.S. at 138, 140 (emphasis added).

The Supreme Court recently applied these principles and invalidated portions of the Sarbanes-Oxley Act as a violation of Article II. *Free Enter.*, 130 S. Ct. at 3153-55.  There, the Act endowed the Public Company Accounting Oversight Board ("PCAOB") "with expansive powers to govern an entire industry[]" under federal law. *Id.* at 3147-48.  At the same time, however, the Act insulated PCAOB members "from removal except for good cause, [and] withdr[ew] from the President any decision on whether that good cause exists." *Id.* at 3153. The Supreme Court concluded that such an arrangement is contrary to Article II's vesting of the executive power in the President because it:

> violates the basic principle that the President cannot delegate ultimate responsibility or the active obligation to supervise that goes with it, because Article II makes a

---

[3] *See Edmond,* 520 U.S. at 662 ("The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in *Buckley,* the line between officer and nonofficer.").

> single President responsible for the actions of the
> Executive Branch.

*Id.* at 3154 (external citation, punctuation, and footnote omitted).   Similarly, in

*Printz v. United States*, the Supreme Court invalidated as unconstitutional the

Brady Act's delegation to chief state law enforcement officials ("CLEOS") of the

duty to perform background checks on gun buyers:

> The Constitution does not leave to speculation who is to
> administer the laws enacted by Congress; the President, it
> says, "shall take Care that the Laws be faithfully
> executed," Art. II, § 3, personally and through officers
> whom he appoints . . . .   The Brady Act effectively
> transfers this responsibility to thousands of CLEOS in the
> 50 States, who are left to implement the program **without
> meaningful Presidential control** (if indeed meaningful
> Presidential control is possible without the power to
> appoint and remove).

521 U.S. 898, 922 (1997) (emphasis added) (internal citations omitted).

Preservation of Presidential and Executive Branch control and accountability

is essential to maintaining the separation of powers.   A statute can withstand an

Article II challenge only where **both** control **and** accountability are provided.   In

*Morrison v. Olson*, for example, the Supreme Court upheld the Ethics in

Government Act ("EGA"), which created the position of an independent counsel to

investigate allegations of criminal acts by high executive officers.   487 U.S. 654,

696 (1988).   The Supreme Court explained that a statute's constitutionality under

the Take Care Clause turns on whether the Executive Branch retains "sufficient

control" over the litigation to "ensure that the President is able to perform [the

President's] constitutionally assigned duties." *Id.* The Court relied on four aspects of the EGA to find it satisfied Article II:

- no independent counsel may be appointed without a specific request by the Attorney General and the decision not to request appointment if he finds no reasonable grounds to believe that further investigation is warranted is unreviewable;
- the Attorney General can remove an independent counsel for good cause;
- the jurisdiction of the independent counsel is defined with reference to the facts submitted by the Attorney General; and
- the Act requires that counsel abide by DOJ policy.

*Id.* at 696.

### 2.    Section 292(b) Violates Article II Because It Lacks Any Executive Control Or Accountability Mechanisms

Congress violates Article II when it enacts legislation that grants individuals outside the Executive Branch the right to bring litigation to enforce federal law without providing mechanisms by which the President and Executive Branch can exercise oversight and control. *Free Enter.*, 130 S. Ct. at 3154; *Printz*, 521 U.S. at 922-23; *see also Morrison*, 487 U.S. at 692 (noting that Congress violates separation of powers when it impermissibly burdens the President's power to control or supervise an executive official in executing his or her duties).

Section 292(b) violates Article II by providing that "[a]ny person may sue" for violations of 35 U.S.C. § 292(a). Section 292(b) lacks any provision for appointment or removal, and transfers the responsibility to enforce this criminal statute to a virtually limitless pool of private relators without any Executive Branch control. *See Free Enter.*, 130 S. Ct. at 3154 ("Neither the President, nor anyone

directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the Board.  The President is stripped of the power our precedents have preserved, and his ability to execute the laws—by holding his subordinates accountable for their conduct—is impaired."); *Printz*, 521 U.S. at 922-23.

> **3.**     **This Court Should Follow The District Court's Decision In** ***Unique Product Solutions*** **And Strike Down Section 292 As Unconstitutional Under The Take Care Clause**

In *Unique Prod. Solutions*, a district court recently struck down Section 292 as unconstitutional under the Take Care Clause.  2011 WL 649998, at *6.  In so holding, the court correctly applied the teachings of the United States Supreme Court in *Morrison v. Olson*, 487 U.S. 654 (1988), finding that "it is clear the government lacks sufficient control to enable the President to 'take Care that the Laws be faithfully executed.'  . . .  [T]he False Marking statute lacks any of the statutory controls necessary to pass Article II Take Care Clause muster." *Unique Prod. Solutions*, 2011 WL 649998, at *6.  The court found that Section 292, with its terse pronouncement that "any person may sue" for violations of the statute, "essentially represents a wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice."  *Id*.  The court explained:

> [Section 292] is unlike any statute in the Federal Code with which this Court is familiar.  Any private entity that believes someone is using an expired or invalid patent

> can file a criminal lawsuit in the name of the United
> States, without getting approval from or even notifying
> the Department of Justice.  The case can be litigated
> without any control or oversight by the Department of
> Justice.  The government has no statutory right to
> intervene nor does it have the right to limit participation
> of the relator.  The government does not have the right to
> stay  discovery  which  may  interfere  with  the
> government's criminal or civil investigations.  The
> government may not dismiss the action.  Finally, the
> relator may settle the case and bind the government
> without any involvement or approval by the Department
> of Justice.

*Id.*

The court further explained that compelling policy reasons support vesting

federal law enforcement in the President and ensuring that the delegation of such

power to a private entity is sufficiently controlled by the Attorney General:

> Prosecutors are granted power not given to private
> parties, and with that power comes the responsibility to
> use it to benefit the public welfare, and not some private
> interest  The doctrine of prosecutorial discretion vests
> each attorney with the responsibility to determine
> whether or not a particular enforcement action is fully
> supported by law and the facts, and whether it is in the
> public interest to initiate it.  A government attorney must
> take into consideration the impact of any enforcement
> action upon the system as a whole and upon the
> administration of justice; a private attorney has no such
> responsibility.  There may be situations where there is
> evidence of a violation but the appropriate course is to
> forebear from initiating any enforcement action.  These
> responsibilities arise in the criminal arena as well as in
> the civil arena.

*Id.*

The court concluded by noting that "[t]he danger of this uncontrolled privatization of law enforcement is exacerbated by the financial penalties" in Section 292(a). *Id.* Statutory penalties under Section 292 may range up to $500 for each article falsely marked, making the possible payouts unpredictable and potentially very large. *Id.* The court reasoned that it was "essential that the government have control over when such cases are brought, and most importantly, how they are settled." *Id.* These decisions, the district court held, are better handled by government attorneys who do not have a financial stake in the outcome of the action, rather than private citizens litigating for personal financial gain. *Id.*

> ### 4. Section 292(b) Lacks Any Of The Executive Control Mechanisms That Have Allowed Other Statutes To Survive Article II Scrutiny

The unfettered delegation of Executive power in Section 292(b) bears no resemblance to the more carefully-crafted statutes that have survived Article II challenges in the courts, such as the FCA and the EGA. Indeed, courts that have rejected Article II challenges to the FCA did so because of the "control mechanisms inherent in the FCA." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757 (5th Cir. 2001) (en banc); *see also, e.g., United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (finding FCA provisions "have been crafted with particular care" so that "the Executive Branch retains 'sufficient control' over the [FCA] relator's conduct to 'ensure that the President is able to perform his constitutionally assigned duty'" (*quoting Morrison*,

487 U.S. at 696)); *Kelly*, 9 F.3d at 755 (holding that "the FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns").

The FCA control mechanisms include providing the Government with the:

- *Right to pre-commencement notification of suit*.  The complaint remains sealed for 60 days, and only if the Government declines to intervene does the relator have the right to conduct the action.  31 U.S.C. § 3730(b)(2) and (b)(4).
- *Right to intervene*.  31 U.S.C. § 3730(c)(3).
- *Right to control the litigation*.  If the Government intervenes, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action."  31 U.S.C. § 3730(c)(1)
- *Right to be served with papers*.  31 U.S.C. § 3730(c)(3).
- *Right to dismiss the action over the relator's objections*.  31 U.S.C. § 3730(c)(2)(A).
- *Right to prevent dismissal by relator*.  31 U.S.C. § 3730(b)(1).
- *Right to settle over relator's objection*.  31 U.S.C. § 3730(c)(2)(B).

*See also generally Taxpayers*, 41 F.3d at 1035, 1041; *Kelly*, 9 F.3d at 746; *Riley*, 252 F.3d at 753-54; *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 933-34 (10th Cir. 2005) (holding government could dismiss FCA *qui tam* action without intervening because contrary interpretation "would place the FCA on constitutionally unsteady ground").

None of the control mechanisms that saved the FCA from violating Article II appear in Section 292(b).  Instead, Section 292(b) gives the relator, not the government, the primary responsibility and control over a Section 292 claim.  The Section 292(b) relator, not the government, has unconstrained authority to

commence the litigation.   And while the government **may** be permitted to intervene in a Section 292(b) action under Federal Rule of Civil Procedure 24, intervenor status gives the government only the basic rights afforded a party under the applicable rules.   It does not give the government either "primary responsibility" or "control" over the relator's claims because the government's rights are no greater than those of any other party.   *See* 7C Wright, Miller & Kane, Fed. Prac. & Proc. § 1920 (3d ed.) (intervenor "has **equal** standing with the original parties") (emphasis added).   Even if the government is allowed to intervene, the government has no right to settle or dismiss the relator's Section 292(b) claims over the relator's objections.   On the other hand, Section 292(b) does not prevent a relator from settling or dismissing its claims without the government's consent.   Fed. R. Civ. P. 41(a)(1)(A)(i); 41(a)(2).   In short, Section 292(b) is nothing like the FCA.   The FCA puts the government in the driver's seat, whereas Section 292(b), at best, only lets the government come along for the ride.

Nor does Section 292(b) contain any of the control provisions that allowed the EGA to survive Article II scrutiny in *Morrison*.   Under Section 292(b), the Attorney General

- lacks any power to appoint or remove a relator;
- cannot control when an action is initiated (or prohibit initiation of an action);
- has no control over the breadth of the claims made or relief sought;
- cannot circumscribe the jurisdiction of the relator;
- has no say in the strategic decisions in the litigation, including settlement; and

- • cannot require the relator to follow DOJ policies.

Indeed, the provisions of Section 292(b) are diametrically opposed to those of the FCA and EGA.  Section 292(b) gives unappointed relators (who have a financial stake in the outcome) unsupervised and unrestricted power to sue on behalf of the United States for alleged violations of federal law, with no oversight or control by the Executive Branch.

> **5.  The Government's Lack Of Control Over _Qui Tam_ Section 292(b) Litigation Has Created Serious Problems In The Real World**

The issue of whether Section 292(b) passes constitutional muster is not merely a theoretical discussion.  Abuse of the statute is real.  The unconstrained efforts by private relators to "enforce" Section 292(b) with no governmental oversight has created a morass of costly litigation that is clogging the federal district courts.  Since the beginning of 2010, nearly 800 lawsuits have been brought alleging violations of Section 292(b).  Indeed, with no supervision, relators are increasingly bringing _qui tam_ Section 292(b) actions that are duplicative of previously-filed lawsuits, burdening the courts' dockets with cases that should never have been brought.  _See, e.g._, _Akbar v. Procter & Gamble Co._, No. 1:10-cv-00105-RC, slip op. (E.D. Tex. Aug. 18, 2010) (Exh. 4); _San Francisco Tech., Inc. v. Glad Prods. Co._, No. 5:10-cv-00966-JF, 2010 WL 2943537, at *4 (N.D. Cal. July 26, 2010) (Exh. 5); _Simonian v. Quigley Corp._, No. 1:10-cv-01259, 2010 WL 2837180, at *1 (N.D. Ill. July 19, 2010) (Exh. 6); _see generally_ Robert A.

Matthews, Jr., "*When Multiple Plaintiffs/Relators Sue for the Same Act of Patent False Marking*," 2010 Patently-O Patent L.J. 95 (Exh. 7).

Because it contains no provision for governmental oversight, Section 292(b) prevents the Executive branch from exercising prosecutorial discretion. Relators are free to pursue their personal agendas, even if doing so would undermine policy decisions made by the President or appointees in the Executive Branch. Even if the Attorney General were to conclude that indiscriminate, widespread, and sometimes duplicative "enforcement" of Section 292(b) (as has been the case since the beginning of 2010) is not in the public interest, the Attorney General is unable to exercise prosecutorial discretion or oversight to curb that harm. Instead, private false patent marking relators pursue their own agendas, and they are largely unaccountable if their actions subvert government policy or even cause public harm.

**6.   Section 292(b) Also Violates Article II Because It Permits Non-Officers To Prosecute Claims On Behalf Of The United States**

Section 292(b) also violates the Appointments Clause by explicitly allowing non-officers to prosecute claims owned by the United States. Section 292(b) relators are self-appointed. They are not appointed by the President (or any authorized officer), nor are they employed by or accountable to anyone in the Executive Branch. And Section 292(b) delegates a key executive power, *i.e.*, the "primary responsibility" and "significant authority" over the litigation, to

individuals who have not been duly appointed and do not answer to the President for their actions. *Buckley*, 424 U.S. at 138, 140; *Kelly*, 9 F.3d at 758.[4]  In so doing, Section 292(b) severs the chain of Presidential accountability for abusive enforcement of federal law, in violation of the Appointments Clause. *Edmond*, 520 U.S. at 664; *see Freytag*, 501 U.S. at 884; *cf. Unique Prod. Solutions*, 2011 WL 649998, at *6 n.8 (finding it unnecessary to reach issue of whether Section 292(b) violates the Appointments Clause because the court found the statute unconstitutional under the Take Care clause).

Because Section 292(b) transfers unrestricted authority to individuals outside the Executive Branch who have not been properly appointed by the President, and without retaining Executive control over its enforcement, it runs directly counter to the fundamental purposes of Article II, *i.e.*, "unity in the Federal Executive [] to insure both vigor and accountability . . . ." *Printz*, 521 U.S. at 922; *Free Enter.*, 130 S. Ct. at 3155.

## B.    The District Court's Article II Analysis In *Solo Cup* Was Flawed

Before *Unique Prod. Solutions* and before the Federal Circuit's acknowledgment that Section 292(b) implicates potential Article II concerns, three district courts rejected Article II challenges to Section 292(b).  There is only one

---

[4] In *Kelly*, the Ninth Circuit held that because the FCA imposes significant governmental controls, a relator in an FCA action does not exercise "significant authority," and an FCA relator does not need to be an officer under *Buckley*.  *Kelly*, 9 F.3d at 758.  That is not the case with Section 292(b), as explained above.

In contrast, Section 292(b) affords the Executive Branch *no* control over the litigation (or even who might choose to bring a Section 292(b) action).  Under the Appointments Clause, the party with "primary responsibility" for prosecuting Section 292(b) claims—the Section 292(b) relator—*must* be a duly-appointed officer.  *Buckley*, 424 U.S. at 126, 140; *Kelly*, 9 F.3d at 758.  That is not the case here.

published opinion on this issue. *See Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 724-28 (E.D. Va. 2009).[5] While the Federal Circuit recently reviewed and affirmed the *Solo Cup* district court's finding of no liability for false marking, *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1365 (Fed. Cir. 2010), the Federal Circuit did not consider the Article II question because the parties did not raise it on appeal. The district court's Article II analysis was flawed and should be rejected for at least four reasons.

> ### 1. While *Qui Tam* Statutes Have A Long History, Section 292(b) Is Nonetheless Unconstitutional Because It Lacks Any Provision For Governmental Oversight

Relying heavily on "the long history of qui tam statutes," the Solo Cup district court concluded that it "is unlikely that the framers would have written a Constitution that outlawed this practice, and then immediately passed several qui tam laws that unconstitutionally encroached on Executive Branch power." *Solo Cup*, 640 F. Supp. 2d at 726; *see also Harrington,* Tr. at 117:20-23 (Exh. 9). That "unlikely" proposition was rejected by the Supreme Court over two hundred years ago. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (striking portion of Judiciary Act of 1789); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 276

---

[5] Two unpublished decisions largely adopted the *Solo Cup* decision wholesale, without adding further discussion or analysis. *Shizzle Pop, LLC v. Wham-O, Inc.*, No. 2:10-cv-03491-PA-FFM, 2010 WL 3063066, at *3 (C.D. Cal. Aug. 2, 2010) (Exh. 8) (relying on *Solo Cup* to deny a motion to dismiss based on Article II); *Harrington v. CIBA Vision Corp., No. 3:08-cv-00251-FDW-DCK, Transcript*. at 117:16-120:5 (W.D.N.C. May 22, 2009) (Exh. 9). Another recent decision rejected Article II challenges, although it was decided before *Unique Prod. Solutions. Promote Innovation LLC v. Medtronic, Inc.*, No. 2:10-cv-00233, slip op. (E.D. Tex. Feb. 2, 2011) (Exh. 10). Those decisions are wrongly decided for the same reasons as explained herein.

(1964) (noting "broad consensus" that the Sedition Act of 1798 was unconstitutional).

Indeed, the *Solo Cup* court missed the point.  The issue was not whether all *qui tam* statutes violate Article II; rather, it was whether this particular *qui tam* statute, Section 292(b), does.  *Unique Prod. Solutions*, 2011 WL 649998, at *5 ("[H]istory alone is an insufficient justification, particularly when the issue is whether the False Marking Statute's *qui tam* provision is constitutional, not whether all *qui tam* provisions are unconstitutional.").  Prior to 2010, Section 292(b) had only rarely been litigated, and its constitutionality had not been considered before now.  Section 292(b) must be assessed under today's constitutional principles.  *Marsh v. Chambers*, 463 U.S. 783, 790 (1983) ("[H]istorical patterns cannot justify contemporary violations of constitutional guarantees."); *see also Walz v. Tax Comm'n*, 397 U.S. 664, 678 (1970) ("[N]o one acquires a vested or protected right in violation of the Constitution by long use, even when that span of time covers our entire national existence and indeed predates it.").

The age of a statute does not make it constitutional when important constitutional issues were not considered in its drafting.  Congressional action "taken thoughtlessly, by force of long tradition and without regard to the [constitutional] problems posed" is entitled to little weight.  *Marsh*, 463 U.S. at 791.  Section 292(b) meets that description.  Its terse language stands in sharp

contrast to the FCA and EGA, whose extensive and more thoughtfully-crafted provisions providing for Executive oversight and control have allowed those statutes to survive Article II challenges. There is simply no reference to Executive oversight or control in the legislative history or the statute itself, and the fact that it was enacted nearly 60 years ago does not save Section 292 from being unconstitutional. S. Rep. No. 82-1979 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394.

> **2.    Article II Makes No Distinction Between Civil And Criminal Actions, And, In Any Event, Section 292(b) Is A Criminal Statute**

*Solo Cup*'s reliance upon the distinction between civil and criminal actions also fails. The court reasoned that Section 292(b) authorizes only "civil action[s]," and, because "civil actions do not 'cut[] to the heart of the Executive's constitutional duty to take care that the laws are faithfully executed,' the Executive Branch need not wield the **same level of control** over civil litigation as over criminal prosecutions." *Solo Cup*, 640 F. Supp. 2d at 727 (emphasis added, citation omitted). Article II, however, draws no distinction between criminal and civil laws: the President "shall take Care that **the Laws** be faithfully executed." U.S. Const. art. II, § 3 (emphasis added).[6] In holding that delegating the right to institute **civil** actions violates Article II, the Supreme Court said that a "lawsuit is the ultimate remedy for a breach of the law, and [that] it is to the President . . . that

---

[6] *Accord Harrington*, Tr. at 118:3-7 (Exh. 9).

the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'"  *Buckley*, 424 U.S. at 138, 140.  Faithful enforcement of all federal laws—criminal and civil—is at the heart of the President's Take Care authority and responsibility.

In any event, the court's distinction is immaterial because Section 292 is a **criminal** statute, as recognized by the Federal Circuit.  *Solo Cup*, 608 F.3d at 1363 ("[T]he false marking statute is a **criminal** one, despite being punishable only with a civil fine.") (emphasis added); *see also id.* (noting that while a "*qui tam* action is civil in form, . . . it arises under a criminal statute.").[7]  In any case, as the *Unique Prod. Solutions* court held, the civil/criminal distinction has no impact in the Take Care Clause analysis under *Morrison*.   *See* 2011 WL 649998, at \*4 n.6, \*5. Regardless of whether it is a criminal statute, Section 292(b) is unconstitutional because it contains no provision for government control or oversight.

### 3.   The Government's Ability To Intervene Does Not Create Sufficient Oversight Or Control To Satisfy Article II

The *Solo Cup* court reasoned that the Executive Branch could "assert its interests" in a Section 292(b) action by intervening under Rule 24.  640 F. Supp. 2d at 727-28; *see also Shizzle Pop*, 2010 WL 3063066, at \*3 (summarizing *Solo Cup*) (Exh. 8); *Harrington*, Tr. at 119:16-20 (Exh 9).[8]  This rationale fails because

---

[7] *See* S. REP. NO. 82-1979, at \*2424 ("This is a criminal provision.") (excerpted page is attached hereto as Exh. 11).

[8] The *Harrington* court cited 28 U.S.C. §§ 517 and 518 as support for the government's "right to be heard in any case in which it has an interest . . . ."  *Id.*  That reliance is misplaced.  Section 517 allows the Attorney General to send the Solicitor General (or other DOJ officer) to a state or district to "attend to the interests of the

intervention is not guaranteed.  Whether the government can intervene depends on a finding that the existing parties do not adequately represent the government's interests.  *See* Fed. R. Civ. P. 24(a)(2); *cf. Stauffer*, 619 F.3d at 1328-29.

But even assuming that the Government could intervene in a Section 292(b) action, the possibility of intervention does not save Section 292(b) under Article II. The government has no control over whether a Section 292(b) complaint is filed or what claims it contains.  *Cf.*, 31 U.S.C. § 3730(b)(2), (b)(4) (giving government control over filing FCA complaints).  And, there is no provision in the statute that gives the government control (or even requires the government's consent) to settle or dismiss a relator's Section 292 claims.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i); 41(a)(2).  As the *Unique Prod. Solutions* court correctly found, the Government's ability to intervene as a substitute for actual control and oversight is illusory: "Even if it does provide the government the right to intervene, Rule 24 of the Federal Rules of Civil Procedure fails to sufficiently protect the government because it does not require that the government actually be served with a False Marking complaint or any relevant pleadings."  *Unique Prod. Solutions*, 2011 WL

---

(continued…)

United States . . . ."  28 U.S.C. § 517.  Nothing more.  Section 518 provides guidelines for selecting DOJ lawyers to represent the United States in cases where the United States has an interest.  28 U.S.C. § 518; *see, e.g.*, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 428 (1983) (noting that "the Attorney General may direct any attorney employed by the Department to conduct 'any kind of legal proceeding, civil or criminal'" (citation omitted)); *Sutherland v. Int'l Ins. Co. of New York*, 43 F.2d 969, 970-71 (2d Cir. 1930).  Section 518 "is merely a housekeeping provision which pertains to the internal organization of the federal government."  *United States v. Philadelphia*, 482 F. Supp. 1248, 1258 (E.D. Pa. 1979), *aff'd*, 644 F.2d 187 (3d Cir. 1980) (collecting cases).  Neither section creates implied powers for the DOJ to file, maintain, participate in, control, or take over any lawsuit in which the United States has an interest.

649998, at *5.  Participation as a party does not give the intervenor "control" of an action, let alone the "meaningful" or "sufficient" control required by Article II. *See also Printz*, 521 U.S. at 922-23 (questioning whether "meaningful Presidential control [exists] without the power to appoint and remove"); *Morrison*, 487 U.S. at 696; *Riley*, 252 F.3d at 757.

### 4.  There Is No Provision In Section 292(b) To Alert The Government That It Should Assert Its Interests

Finally, there is no mechanism in Section 292(b) to alert the Department of Justice that it **should** intervene.  The *Solo Cup* court relied upon 35 U.S.C. § 290, which requires that a court notify the United States Patent and Trademark Office ("PTO"), of a lawsuit involving a patent.  640 F. Supp. 2d at 728; *see also Harrington*, Tr. at 119:21-120:2 (Exh. 9).[9]  That analysis ignores that the PTO and DOJ are separate and distinct arms of "the government."  Notifying the PTO that a patent action has been filed is not equivalent to notifying the DOJ of a Section 292(b) action.  There is no mechanism in place by which the PTO forwards the notice it receives pursuant to Section 290 to the DOJ.  *Unique Prod. Solutions*, 2011 WL 649998, at *5 (finding that Section 290 "hardly constitutes sufficient notice to the government that a False Marking *qui tam* action has been filed.").

---

[9] Similarly unavailing is the *Harrington* court's reliance on the United States' receipt of funds after the lawsuit, combined with the government's purported ability to move to set aside the judgment under Rule 60(b). *Harrington*, Tr. at 119:21-120:2.  Receipt of a check in the mail does not inform the government that any action should have been taken while the case was pending.  Once funds are paid, the claim has already been adjudicated or settled.  Seeking to set aside a judgment under Rule 60(b) after the fact is a drastic measure, and it is very difficult to establish sufficient cause to warrant such relief.

Further, the notice received by the PTO does not differentiate between the various kinds of patent actions filed in federal courts, including, e.g., patent infringement, declaratory judgment, interferences, inventorship correction and false marking.  35 U.S.C. § 290; *see also* 35 U.S.C. §§ 145, 146, 256, 271, 291. When the PTO receives notice under Section 290, all it knows is that a federal lawsuit has been filed that implicates the patent identified in the notice.  There is no procedure that instructs the PTO to assume the burden to ensure that the DOJ receives notice of claims brought under Section 292(b).

The district court in *Unique Prod. Solutions* agreed that Section 290 is insufficient to give the Government meaningful notice of a Section 292 action:

> While 35 U.S.C. § 290 requires each clerk of a district court to "give notice thereof in writing to the Director [of the United States Patent and Trademark Office]" within one month after the filing of a patent action under Title 35, the only information required to be provided are the names and addresses of the parties, name of the inventor, and the designating number of the patent at issue.  The clerk is not even required to provide the statute under which the cause of action has been brought, and it is the Patent Office, rather than the Department of Justice (which would seek to intervene in a lawsuit), that is notified. This hardly constitutes sufficient notice to the government that a False Marking *qui tam* action has been filed.

2011 WL 649998, at *5.  As that court recognized, even if notice of a false marking suit reaches the DOJ, the case may have already settled, making the process ineffective.  *Id.* ("This presents a unique problem with False Marking *qui*

*tam* actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation.  Thus, without even being notified of the *qui tam* action brought on its own behalf, the government may be bound by a settlement and will likely precluded from bringing its own suit under the doctrine of res judicata.").

Assuming for the sake of argument that Section 290 could provide notice to the Government of false marking claims in general, there is no doubt that the procedure failed in this case.  There is no record, either in this Court's docket or in the PTO file wrapper, that any Section 290 notice was sent to the PTO (or forwarded to the DOJ) in this case.  Even if Section 290 notice were relevant to the Article II analysis (and it is not), the failure of notice in this case highlights the constitutional problems with Section 292(b).

## III.   CONCLUSION

This Court should dismiss Ms. Powell's complaint with prejudice.

Respectfully submitted on this the 15th day of March, 2011.

/s/ David M. Maiorana
Walter William Bates (ASB-7202-E49W)
Jay M. Ezelle (ASB-4744-Z72J)
STARNES DAVIS FLORIE LLP
Seventh Floor, 100 Brookwood Place
P. O. Box 598512
Birmingham, AL 35259-8512
(205) 868-6000
e-mail: bbates@starneslaw.com
        jezelle@starneslaw.com

OF COUNSEL:

David M. Maiorana (admitted *pro hac vice*)
Susan M. Gerber (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939
e-mail: dmaiorana@jonesday.com
         smgerber@jonesday.com

**Attorneys for**
**The Procter & Gamble Company**

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 15th day of March, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.    wlgarrison@hgdlawfirm.com

Timothy C. Davis    tdavis@hgdlawfirm.com

Jeffrey P. Leonard    jleonard@hgdlawfirm.com

Brian Hancock    bhancock@hgdlawfirm.com


/s/ David M. Maiorana
David M. Maiorana (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939